510 So.2d 411 (1987)
STATE of Louisiana, Appellee,
v.
Jonathan WILLIS, Appellant.
No. 18,694-KA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
*412 William Rick Warren, Indigent Defender Bd., Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Charles McConnell, Asst. Dist. Atty., Minden, for appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Jonathan Willis, was convicted by a jury of the unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3.[1] He was subsequently adjudicated a third felony offender under the authority of LSA-R.S. 15:529.1.[2] After *413 reviewing a presentence report the trial court sentenced the defendant to serve twelve years at hard labor with credit given for time served. The defendant appeals the conviction as well as the sentence imposed.
We affirm.

FACTS
On May 8, 1985, shortly after midnight, an individual gained unauthorized entrance to a private residence located in Springhill, Louisiana, by climbing through a kitchen window. This individual proceeded to a bedroom where Cynthia Rankin, age 14, was asleep in her bed. The intruder pulled the bed sheets down from around the girl and began to pull her night gown up when she awoke and started screaming for her 16 year old brother who was asleep in an adjoining room. The brother's response caused the intruder to bolt toward the front of the residence where an escape was made through the opened window in the kitchen.
The defendant was arrested shortly thereafter and charged by a bill of information with the unauthorized entry of an inhabited dwelling.[3] The defendant was arraigned and entered a plea of not guilty. The defendant was convicted by a jury and sentenced by the trial court as previously related.
The defendant's three assignments of error present the following issues:
(1) Did the court commit reversible error in denying the defendant's motion for a mistrial based upon the prosecution's reference to other crimes in its opening statement?
(2) Was the evidence presented at trial insufficient to support a verdict of guilty as charged?
(3) Is the sentence imposed unreasonable and excessive?

* * * * * *

Assignment of error # 1The defendant's motion for a mistrial

LAW ON REFERENCE TO OTHER CRIMES AS A BASIS FOR A MISTRIAL
Upon motion by a defendant a mistrial shall be ordered when a remark or comment, made within hearing of the jury by the district attorney, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. LSA-C.Cr.P. art. 770.[4] There are exceptions to the prohibition of reference to other crimes and included among these are offenses admissible as part of the res gestae and evidence admissible to establish a motive for the commission of the crime charged. State v. Brown, 398 So.2d 1381 (La.1981); LSA-R.S. 15:447, 448.[5]

Should the trial court have declared a mistrial?
The record shows that during opening arguments the prosecution asserted the following to the jury:
"... We intend to show you that this defendant, Jonathan Willis, did in truth and in fact, enter into that dwelling. He went in through the window and exited through a window and there went into *414 Cynthia Rankin's room, lifted up her gown, she screamed, he left...." [emphasis added]
The record also shows that the defendant was 25 years of age at the time of trial and that his counsel moved for a mistrial arguing the prosecutor's statement could possibly be a reference to other crimes. The trial court denied the motion.
The defendant asserts the remark concerning the lifting of the girl's gown refers to such other crimes as battery (LSA-R.S. 14:33), attempted sexual battery (LSA-R.S. 14:27, 43.1), attempted carnal knowledge of a juvenile (LSA-R.S. 14:27, 80),[6] or attempted rape (LSA-R.S. 14:27, 41). It is also asserted the remark is of such a nature that it tended to inflame and prejudice the jury against the defendant.
We determine that this assignment of error is meritless and that the trial court was correct in denying the motion for a mistrial. It is evident from the record that the asserted conduct, in proceeding to the bedroom and lifting the gown of the girl after illegally entering the dwelling, is so closely entwined in the conduct charged that it must be construed as a necessary incident of the criminal act. In addition, reference to this particular conduct is admissible to establish the defendant's movie to commit the crime charged as there is no evidence that anything in the dwelling was stolen. In either event, the prosecution's reference to the defendant's conduct qualifies as an exception to the general prohibition against reference to other crimes and it is not necessary to balance the probative value of the reference against its alleged prejudicial effect on the jury. State v. Brown, supra.

Assignment of Error # 2Was there sufficient evidence to support the verdict?

LAW ON THE SUFFICIENCY OF THE EVIDENCE NEEDED TO SUPPORT A CRIMINAL CONVICTION
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. The circumstantial evidence rule is not a stricter standard of review than the more general reasonable juror's reasonable doubt formula but a helpful methodology for its implementation by an appellate court in cases which hinge on the evaluation of circumstantial evidence. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Outlaw, 485 So.2d 217 (La.App. 2d Cir.1986); LSA-R.S. 15:438.[7] Stated another way, the test is the reasonableness of the ultimate conclusion on the facts and inferences drawn from the facts in a particular case. State v. Woods, 494 So.2d 1258 (La.App. 2d Cir. 1986).

Is the evidence sufficient to support the conviction?
The defendant argues the evidence presented does not justify a finding of guilt beyond a reasonable doubt. In particular it is asserted there is no evidence placing the defendant inside the dwelling but there is evidence that the defendant was at his sister's apartment at the time the offense was alleged to have occurred.
The record shows that at trial Dorothy N. Rankin testified she was the lessee who lived in the dwelling at the time of the offense and the mother of Cynthia Rankin. This witness also related that she knew the defendant and had never given him permission to enter her home.
Cynthia Rankin testified that she was asleep in her bedroom and was awakened *415 by the bed cover being pulled off of her and her night gown being pulled up. She related that there was no light on in the room but she could perceive a "tall, skinny, long-haired man" who bolted when her screams for help aroused her 16 year old brother who was sleeping in an adjacent room. The girl testified she heard the intruder crash into the furniture as he attempted to escape in the dark and she saw him go out the kitchen window. She also related she saw the defendant, in the light generated by a nearby milk dairy, running from the house. On cross-examination the witness admitted that she only assumed the individual had left by the kitchen window, and that when she ran outside she saw no one.
Patrick Wayne Robinson, Cynthia's 16 year old half-brother, testified he was asleep in his bedroom next to the bedroom of Cynthia Rankin when he heard his sister scream and glanced at someone running by his bed toward the front of the house. He related that he heard the intruder running into furniture and crashing into things and also heard the faucet come on in the kitchen sink. He also related that after the intruder left he noticed that the outside doors were still latched from the inside.
Verlene Norton testified she and two friends were walking approximately one block from the residence of Dorothy Rankin when she saw the defendant running from the direction of Rankin's house. Immediately thereafter she observed the lights in the house come on and Cynthia Rankin come outside. The witness related that she had known the defendant for a long time and that there was sufficient light from adjacent houses and a street light so that she could identify him and see that he was wearing blue jeans, a flowery/checkered shirt and only black socks and no shoes. She concluded by testifying she identified the defendant at the police station later that morning and that he was wearing the same clothes she had seen him wearing earlier.
Patricia Ann Robinson, sister of Cynthia Rankin, testified she was accompanying Verlene Norton and observed the defendant in the light running from the direction of the residence of Cynthia Rankin. She said she identified him when she saw him and related that he had no shoes on and was wearing blue jeans and a striped shirt. She also related that the defendant was as far from her as was the distance between the witness stand and the defense table where she saw him running. The witness added that she had seen the defendant earlier in the evening on the same street as Cynthia Rankin's residence was located and he asked Patricia Robinson if he could be her boyfriend. The witness later identified the defendant at the police station and that he was wearing the same clothes she had seen him in earlier.
Donald Ray Coleman testified he was one of the police officers who responded at 1:00 a.m. to a report of a break in at the residence of Dorothy Rankin. Upon investigation of the scene he discovered a window open in the kitchen over the sink and the faucet in the sink turned on. The window was approximately five feet above the ground. He also observed that the outside screen for the window had been torn away and laid back and that the window was painted white but that it was not fresh paint. The officer related that he took statements from several witnesses who identified the defendant as the individual seen running from the area of the residence. The officer proceeded to the apartment of the defendant's sister where he found and arrested the defendant. Officer Coleman testified the defendant was lying on a bed with his shirt and shoes off. Abrasions were noticed upon the defendant's right shoulder and back area in addition to a substance which appeared to be white paint. The officer admitted that no tests were conducted to confirm that the substance was evidence of white paint. The witness also related that he had seen the defendant at approximately midnight one street over from the residence in question and that the defendant was wearing socks but no shoes.
Sgt. Billy Wood testified he was one of the police officers who investigated the scene of the crime. He related the outside wall under the kitchen window was marked *416 and scarred. He testified that the window was open, the outside screen was torn back and some dishes in the kitchen sink had been disturbed.
Albert Carter, Jr. testified he knew the defendant and that they had both spent the night in the apartment belonging to Deborah Willis Thomas, the defendant's sister, on the night of the offense. The witness related that he had gone to sleep sometime before 10:00 p.m. and that the defendant had been present in the apartment at that time. He related the next thing he was aware of was the police knocking on the door.
Teresa Willis, the defendant's sister, testified she had last seen her brother around 9:00 p.m.9:30 p.m. on the night of the offense when he came to borrow $5.00. The defendant left walking to return to the apartment of Deborah Willis as it was only a short distance away.
Deborah Willis Thomas testified she was the defendant's sister and that her brother resided with her. She related the defendant had returned from the apartment of Teresa Willis around 9:45 p.m. and that he had stayed up and watched television with her until she fell asleep around 11:00 p.m. The next thing she remembers is the police arriving at her apartment looking for the defendant. The witness also related that her brother did not have any abrasions on his shoulder or paint upon his clothes and that she observed him with his shirt off and his blue jeans and shoes on after the police arrived. She did admit that the defendant could have left the apartment after she had fallen asleep.
George Willis, Jr., testified he is the defendant's first cousin and that he and the defendant spent the night at the apartment of Deborah Willis Thomas on the night of the crime. He related he was the last person in the apartment to go to sleep and that he fell asleep about 12:00 midnight 12:30 a.m. and the defendant was there in the apartment. The witness asserted that he had slept on the couch and that he would have known if anyone had left as he was a light sleeper. The witness asserted the defendant did not leave the apartment and acknowledged that he was presently incarcerated serving a six month sentence for forgery. The witness also added that the defendant had gone to bed with all of his clothes on including his shoes.
We conclude that the evidence of record is sufficient to sustain the conviction. Although the visual identification of the defendant by Cynthia Rankin is contradictory, she did initially describe the intruder as being "tall and skinny." The presentence investigation report prepared approximately five months after the defendant's arrest lists him as being 6'2" and weighing 140 lbs. The jury had ample opportunity to compare the child's physical description of the intruder to the appearance of the defendant at trial. Two witnesses, Verlene Norton and Patricia Ann Robinson, positively identified the defendant as the individual wearing socks and running from the Rankin residence at the time of the crime. One of these witnesses, Patricia Ann Robinson, had seen and talked with the defendant earlier in the night on the same street that the residence in question was located. Officer Coleman had observed the defendant at approximately midnight one street over from the residence in question and wearing socks and no shoes. The testimony of Albert Carter, Jr., Teresa Willis and Deborah Willis Thomas do not positively place the defendant at his sister's apartment at the time of the crime. The testimony of Deborah Willis Thomas and George Willis, Jr. is in direct conflict with the testimony of Officer Coleman in regard to the existence of abrasions and a white substance on the defendant's body as well as the lack of shoes. The description of the bruises and white substance upon the defendant's body is consistent with the consequences of climbing through a window five feet off the ground and subsequently crashing into furniture in an effort to escape from the residence and then again crawling through the window. The jury is entitled to use their sound discretion and give this exculpatory testimony the weight they deem appropriate taking into consideration the relationship of the witnesses to the defendant and George Willis' incarceration for a forgery conviction. Cf., State v. *417 Rodriguez, 476 So.2d 503 (La.App. 1st Cir. 1985).
Viewing the totality of the evidence in a light most favorable to the prosecution we determine that there is no reasonable hypothesis of innocence and any rational trier of fact could have found that the state proved the essential elements of the crime charged beyond a reasonable doubt. State v. Outlaw, supra; State v. Woods, supra.

Assignment of Error # 3The excessiveness of the sentence

LAW ON THE REVIEW OF CRIMINAL SENTENCES
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ den., 439 So.2d 1074 (1983). The articulation of the factual basis for a sentence is the goal of article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La. App. 2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ den., 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ den., 452 So.2d 695 (La. 1984). As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pleaded offense. State v. Richardson, 446 So.2d 820 (La.App. 2d Cir.1984).

Is the sentence excessive?
The defendant argues that the trial court abused its discretion in sentencing him to the maximum possible period of incarceration of twelve years as there were no injuries involved and nothing was taken from the residence.
The record shows that at the sentencing hearing the trial court reviewed a presentence investigative report which revealed the defendant, as a juvenile, had been arrested on July 19, 1977 in Michigan for criminal sexual conduct which had been reduced to a charge of illegal entry and assault and battery. There was no disposition of this charge. On April 11, 1978, as a juvenile, he was arrested in Springhill, Louisiana, on a charge of theft. He was convicted and served fifteen days in jail. On *418 July 26, 1978, as an adult, he was again arrested in Springhill, Louisiana, and charged with theft of a handgun. He was convicted and again served fifteen days in jail. He was again arrested in the same city on November 15, 1978, on a charge of theft but there was no disposition indicated in the report. On January 23, 1979, the defendant was arrested in Texas on a charge of burglary of a vehicle. He was convicted and sentenced to three years probation. This probation was revoked after nine months for failure to report and the defendant was sentenced to serve two and one-half years at hard labor in Texas. Parole was granted on May 29, 1980, and he was allowed to return to Louisiana as a Texas parolee. On September 11, 1981, he was arrested in Minden, Louisiana, on charges of simple burglary and theft. He was convicted of both crimes and sentenced to concurrently serve three years on the simple burglary conviction and two years on the theft conviction. He was discharged on June 6, 1983. On September 13, 1983, the defendant was arrested in Springhill, Louisiana, on a charge of simple burglary which was reduced to a charge of middle grade theft. He was convicted and sentenced to two years in the parish jail. This conviction resulted in his Texas parole being revoked on May 17, 1982.
The trial court also noted that the 25 year old defendant was a high school drop-out who had quit school after the tenth grade and who had an unstable work history and who was classified as a multiple offender. The report also reveals that Cynthia Rankin sustained psychological impairment as a result of the crime. The trial court also noted that the report revealed the defendant admitted smoking marijuana "about once a week." The trial court expressed that the most disturbing aspects of this crime were the potential harm that may have occurred if Cynthia Rankin's brother had not caused him to run off and the defendant's extensive juvenile report, particularly the prior sexual misconduct arrest in Michigan. The trial court concluded by ruling that the defendant's prior criminal convictions, his lack of remorse for the instant offense and the prior opportunities given by his probation and parole mandated that the imposed sentence is necessary in order not to deprecate the seriousness of the instant crime. In addition, the trial court was also of the opinion that the defendant was in need of treatment which could most effectively be provided by a period of incarceration. The trial court subsequently sentenced the defendant to the maximum twelve year period based upon his status as a third felony offender.
We conclude the sentence imposed does not violate LSA-Const. Art. 1, § 20 (1974) and the trial court adequately complied with LSA-C.Cr.P. art. 894.1. The defendant's extensive criminal history speaks for itself and shows that the maximum sentence of twelve years is justified as the instant conviction does not adequately describe his conduct and as he has proven himself to be recalcitrant and a serious and continuing threat to society. Cf., State v. Richardson, supra; Cf., State v. Walton, 440 So.2d 850 (La.App. 2d Cir.1983), writ den., 443 So.2d 1121 (La.1984). We do not feel that the trial court gave too little weight to the fact that no physical injuries or theft occurred and agree that an absence of such consequences was the fortuitous intervention of Cynthia Rankin's brother rather than a lack of criminal intent on part of the defendant. In addition the girl's psychological impairment is an injury that did result from this criminal conduct. The totality of the record establishes the defendant is the worst sort of offender and the sentence imposed is not unreasonable or excessive.

CONCLUSION
The conviction and sentence are AFFIRMED.
NOTES
[1] § 62.3. Unauthorized entry of an inhabited dwelling

A. Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
B. Whoever commits the crime of unauthorized entry of an inhabited dwelling shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than six years, or both.
[2] § 529.1. Sentences for second and subsequent offenses; certificate of warden or clerk of court in the state of Louisiana as evidence

A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
. . . . .
(2) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then,
(a) The person shall be sentenced to imprisonment for any term not less than one-half the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or [emphasis added]
. . . . .
[3] See footnote # 1
[4] Art. 770. Prejudicial remarks; basis of mistrial

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . . . .
[5] § 447. Res gestae defined; admissibility

Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
§ 448. Relation of res gestae to criminal act
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
[6] We note that attempted carnal knowledge of a juvenile would not be applicable as this crime would require the actual consent of the girl.
[7] § 438. Circumstantial evidence

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.