529 So.2d 1334 (1988)
STATE of Louisiana
v.
Joseph VINET.
No. 88-KA-175.
Court of Appeal of Louisiana, Fifth Circuit.
July 26, 1988.
*1335 Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals Office of the District Attorney, Gretna, for plaintiff/appellee.
Martha E. Sassone, 24th Judicial District, Indigent Defender Board, Gretna, for defendant/appellant.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
Defendant, Joseph A. Vinet, appeals his conviction and sentence for violation of R.S. 14:31, Manslaughter. We affirm.
Defendant was charged with manslaughter by bill of indictment and on November 25, 1986 entered a plea of not guilty.
On April 27, 1987 the court heard testimony on defendant's motion to suppress confession, following which it denied the motion. A motion to quash was denied on *1336 June 26, 1987, from which denial defendant applied to this court for writ of certiorari. The application was denied on August 17, 1987. Just before trial, the court denied defendant's motion in limine, in which he sought to exclude from evidence any portion of defendant's statement "which describes alleged facts that occurred after the alleged crime of death, as presented by the state of Louisiana." A jury trial was held on October 20 and 21, 1987, after which the jury returned a verdict of guilty of manslaughter. On December 1, 1987 the defendant was sentenced to fifteen years at hard labor.
FACTS
On September 17, 1986 Joseph Vinet reported from the Sea Runner, on which he was employed as a deckhand, that the captain had fallen overboard. A relief captain and an employee of Offshore, in investigating the captain's disappearance, discovered large quantities of blood in the galley of the boat. They notified the Plaquemines Parish Sheriff's Office, which later received a statement from Vinet confessing that he had stabbed the captain while the boat was tied up at Grand Isle and disposed of the body in the Gulf.[1] He stated further that in the process of removing the body from the boat he tied a rope around the decedent's neck and the head became detached from the body. Vinet was subsequently charged with manslaughter in Jefferson Parish where the offense had been committed.
Assignment of Error Number One: The court erred in denying defendant's motion to quash.
Having ruled previously on the same issue on August 17, 1987, this court is precluded from reconsidering the motion to quash. State v. Yelverton, 515 So.2d 828 (La.App. 5th Cir.1987).
Assignment of Error Number Two: The trial court erred in denying defendant's motion in limine.
The defendant sought to have the part of his "alleged statement" alluding to the decapitation excluded from evidence.[2] He argues that that portion of his statement was not probative of an element of the crime of manslaughter but served only to inflame the jury.
R.S. 15:450 provides:

*1337 Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
A defendant has the right to object to mention of other crimes in a statement; however, he does not have the right to exclude the entire statement unless the confession itself is inadmissible. State v. Morris, 362 So.2d 1379 (La.1978); State v. Joseph, 454 So.2d 237, 246 (La.App. 5th Cir.1984).
In this case, no corpse or portion thereof was recovered and consequently no autopsy was performed. The state presented evidence of three possible ways the victim could have been killed: stabbing, strangulation, or decapitation. Dr. Charles B. Laramore, Assistant Coroner for Jefferson Parish, testified as an expert physician that of the three possibilities only decapitation was certain to result in death.
The defendant's statement was necessary to prove the elements of manslaughter and contained no mention of other crimes. Accordingly, admission of the statement in its entirety was correct.
Assignment of Error Number Three: The trial court erred in denying defendant's motion to suppress the inculpatory statements.
Defendant argues that the inculpatory statements obtained by Plaquemines Parish police officers, the F.B.I., and the Jefferson Parish Sheriff's office deputies were not accompanied by knowing waivers of appellant's constitutional rights.
La.C.Cr.P. art. 218.1 provides:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.
At both the Motion to Suppress Hearing and the trial the State presented the testimony of Detective Rennie Coludrovich, Agent Shields and Detective Steve Buras, of the Plaquemines Parish Police office, the F.B.I. and the Jefferson Parish Sheriff's office, respectively. Each testified to the circumstances of the statement obtained. The defendant was read his rights and indicated an understanding of those rights prior to giving his statement. Each testified that the defendant was not coerced either verbally or physically into giving the statement nor was he promised anything in return for giving the statement.
Vinet testified that he told the Coast Guard (the first authorities on board) that the captain fell off the boat and drowned. When the Plaquemines Parish detectives came on board, examined the galley, and asked Vinet what had happened, "... It seemed like they really knew what happened and stuff so I figured I'd tell them." Vinet admitted signing the Miranda rights sheet before making a formal statement but said that he was "shook up" at the time and did not know what it meant. We note that detective Buras of Jefferson reported that the defendant kept volunteering details of the crime while he and his partner were driving Vinet to Gretna, and that they had to tell him to stop talking.
The Louisiana Supreme Court addressed the admissibility of confessions in State v. Vaccaro, 411 So.2d 415, 423 (La.1982), as follows:
The law is clear that before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(C); LSA-R.S. 15:451; State v. Dison, 396 So.2d 1254 (La.1981); State v. Bell, 395 So.2d 805 (La.1981); State v. Haynie, 395 So.2d 669 (La.1981). The admission of a confession in the first instance is a question for the trial judge. His conclusions on the credibility and *1338 weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are unsupported by the evidence. See State v. Dison, supra, State v. Napier, 385 So.2d 776 (La.1980); State v. Jackson, 381 So. 2d 485 (La.1980). This court has held that the state must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Dison, supra, State v. Franklin, 381 So.2d 826 (La.1980); State v. Davis, 380 So.2d 607 (La.1980).
Clearly defendant's self-serving testimony was overwhelmingly disproved by each officer's testimony concerning the voluntary nature of the statement. The defendant knowingly and intelligently waived his constitutional rights on each of the three occasions when he gave a statement.
Assignment of Error Number Four: The evidence presented by the state was not sufficient to justify the verdict.
In assessing the sufficiency of evidence, the due process standard as stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that the reviewing court determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. La. C.Cr.P. art. 821. Where circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard but rather a "helpful methodology for determining the existence of reasonable doubt." State v. Porretto, 468 So.2d 1142 (La.1985); State v. Captville, 448 So.2d 676 (La.1984). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Porretto, supra.
The defendant was convicted of manslaughter in violation of R.S. 14:31, which reads, in pertinent part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
. . . . .
The State had the burden to prove that a crime had been committed, i.e., the corpus delicti. While the defendant's confession alone is insufficient to establish the corpus delicti, it may be considered along with other evidence in deciding whether the corpus delicti has been proved beyond a reasonable doubt. State v. Simmons, 443 So. 512 (La.1983).
The evidence presented at trial was sufficient to support the jury finding that Captain Jenkins Nelson was injured by criminal means. He had been missing since September 16, 1986. Albert Doty, an employee of Offshore Well Service, which had leased Sea Runner for transport to and from one of its platforms, testified to having seen Nelson on that day. Doty and two guests, Nelson, and Vinet were fishing from the Sea Runner until 6:30 p.m. Nelson and Vinet then returned Doty to the platform, dropped one guest at Empire and went to Grand Isle where they dropped the second guest. They were to spend the night at Grand Isle and stand by to pick up an Offshore employee the next morning. Doty was unable to contact the boat the *1339 next morning until about 10:00 when the Sea Runner radioed the platform. Vinet told him he did not know where the captain was and he was tied up at a nearby platform in the Gulf. At trial, three of Nelson's family testified that they had not seen him since he was reported missing and had been in regular contact with him before he reported to work.
Human blood was found spattered about the walls, ceiling, top of refrigerator and other places in the galley, including a large amount in the bilge. Human hairs were found on the boat. Clothing belonging to Nelson and Vinet, along with rags and equipment from the boat, were brought up from the floor of the Gulf at the platform. The clothing had been weighted down.
As there is sufficient evidence to justify the verdict of manslaughter, we find that this assignment of error is without merit.
Assignment of Error Number Five: The court erred in sentencing the appellant to an excessive sentence of fifteen years' imprisonment at hard labor.
Article 1, Section 20 of the Louisiana Constitution provides: "No law shall subject any person to cruel, excessive or unusual punishment." A sentence may violate a defendant's constitutional right against excessive punishment even though the sentence is within the statutory limit and is subject to appeal. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is unconstitutionally excessive if it is grossly out of proportion to the severity of the offense or nothing more than a needless and a purposeless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982). The elements to be analyzed in determining whether the punishment is excessive are the nature of the offense and the background of the offender. State v. Robicheaux, 412 So.2d 1313, (La.1982).
The defendant was convicted of violation of R.S. 14:31, Manslaughter. The maximum sentence is twenty-one years at hard labor.
The trial judge, in sentencing the defendant, followed the guidelines of C.Cr.P. art. 894.1 specifically articulating his reasons for sentencing defendant to fifteen years at hard labor. He stated he had reviewed a psychiatric report, an extensive probation department investigation report, and defendant's extensive juvenile record. He noted that the probation department found that the "offender could probably be a menace to society due to his violent nature." Because of the severity of the crime, a lesser sentence would deprecate its seriousness.
As the judge considered mitigating and aggravating factors and the sentence is well below the maximum, there is no indication of abuse of his discretionary power.
Errors Patent
In our examination of the record for errors patent we found that the sentence failed to give credit for time served; however, the state has filed a motion to correct the omission.
A technical error in the form of the indictment, omission of the numerical citation of the statute under which defendant was charged, was noted but is harmless error in the absence of a showing by defendant of surprise or lack of notice causing prejudice. State v. Sims, 426 So.2d 148 (La.1983). Further, the correct statute number appears on the cover of the indictment.
For the reasons assigned above, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Vinet had moved the Sea Runner to a platform in the Gulf, where he reported the captain's disappearance. Employees of Crew Boats, Inc., owner of the boat, moved it to Empire, where Vinet was met by Plaquemines Parish authorities who arrested and transported him to the Port Sulphur lockup. Vinet gave his statement to the Plaquemines detectives and subsequently to detectives from Jefferson Parish and to an FBI agent who had also been called.
[2] As noted above, three statements were made. The first statement, dictated by Vinet to Plaquemines Parish detectives on September 18, 1986, reads as follows, in pertinent part:

I work as a deckhand on the M/V Sea Runner, on Wednesday morning about 1 AM me & the captain started fighting in the kitchen, the captain got a steak knife. I had him by the neck. I got the knife away from the captain & I started stabbing him, I stabbed the captain several times with the steak knife. It all happen in the gallery, the boat was docked at the Gemeco dock in Grand-Isle. After it happen, a few minnets after I found out that the captain was dead, then I cranked up the boat with him still in the galley. I ran the boat to a platform that we work out there, the back to the platform & tied the boat, then I was trying to drag him out the cabin. I could not pick him, so I tied a rope to him around his head. I drug him out. I had to use the boat to drag him out. I put the rope around his head, I put it around a bit on the platform & tied the other end to the bit on back of the boat. I then started pulling ahead with the boat pulling the captain out of the galley. While I was dragging him out & he got to the back of the boat I could stop the boat & pulled his whole head from his body. I then threw his body in the gulf, his head had come loose from the rope & fell in the water. I threw the rope in the water to. Then I went & tied the boat to another platform, & started cleaning up. The boat had blood all over it. After I got the boat all cleaned up it was about 10 oclock in the morning, it was about 5 oclock when I threw the body over. While I was getting finish cleaning the boat, I heard the platform the Sea Runner, so I answered the radio & told them that the skipper wasn't no where around the boat. That when they called the Coast Guard to go look for me. The clothes I had on when it happen had blood on them so I threw them over board. Thats it.
. . . . .