539 So.2d 952 (1989)
STATE of Louisiana, Appellee,
v.
Mary McKNIGHT, Appellant.
No. 20216-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
Rehearing Denied March 23, 1989.
*953 David M. Newell, Indigent Defender Bd., Homer, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., H. Russell Davis, Asst. Dist. Atty., Arcadia, for appellee.
*954 Before MARVIN, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The defendant, Mary McKnight, appeals her conviction and sentence for aggravated burglary, a violation of LSA-R.S. 14:60. She was sentenced to serve fifteen years at hard labor. For the following reasons, we affirm the defendant's conviction. However, the defendant's sentence is vacated and set aside and this case is remanded for resentencing.

FACTS
On August 28, 1987, the defendant, then a Texas resident, was visiting Ringgold, Louisiana, on her young granddaughter's birthday. After dining in Bossier City with the child, the defendant drove to the Ringgold cemetery where her youngest son, who had committed suicide in 1986, was buried. She then drove to the home of her ex-husband and the boy's father, Ross Edwards, at about 11:00 p.m. The defendant left her four-year-old granddaughter sleeping on the back seat of her automobile, the engine of which she left running. The defendant, barefooted with a fillet knife in a scabbard tucked in the belt of her dress, then entered the glass-enclosed plant room or atrium of the Edwards residence. She began to knock or pound on the doors leading into the living room. Mr. Edwards and his present wife, Kathy Edwards, were awakened by the pounding and went into the living room to investigate.
The testimony of the defendant and the Edwardses differ substantially as to what transpired after the defendant's arrival at the Edwards' home.
Kathy Edwards testified that she heard a sharp, crashing sound from the plant room. Leaving her bedroom and entering the living room, Mrs. Edwards looked out the window and saw the defendant "bouncing" against the door with her shoulder. Mrs. Edwards' husband told her to get back away from the door. As she turned to go to call the police, Mrs. Edwards heard a noise. Looking back, she saw the defendant enter, off balance. As the defendant came into the living room, Mr. Edwards asked her what she wanted or needed. The defendant placed her hands on her head, looked directly at Mrs. Edwards, and said, "This is what I need." Mrs. Edwards testified that the defendant then lunged at her and grabbed her by the arms. Mrs. Edwards managed to break away from the defendant, who then pulled the knife from her belt and came at Mrs. Edwards again.
Mr. Edwards testified that at this point he grabbed the defendant from behind. The defendant turned towards him, knife uplifted, and stabbed him in the upper part of his right arm. Mr. Edwards testified that after the defendant stabbed him, he was able to push her over the back of the couch, with her head almost touching the cushions, and held her arms across her chest. The defendant then dropped the knife, and Mrs. Edwards placed it on the mantle.
The defendant testified that she went to the Edwards' home because she wanted to "shake Kathy." She claimed that she armed herself with a fillet knife before approaching the house because she was afraid of Mr. Edwards. The defendant testified that she went through the atrium to the French doors leading into the living room. Mrs. Edwards came to the door in response to her knocking and called for Mr. Edwards.
According to the defendant, Mr. Edwards opened the door and demanded to know what she wanted. The defendant testified that she responded, "There she is," and reached for Mrs. Edwards, who began to "spin" away from her. The defendant testified that Mr. Edwards then grabbed her and threw her over the back of the couch. She claimed that she was unable to breathe and that she then drew her knife from its scabbard and stabbed Mr. Edwards in self-defense. She was then subdued by Mr. Edwards.
The police were summoned by members of Mrs. Edwards' family. The sleeping child in the automobile was discovered and arrangements were made to provide for her care. Officer Troy Sanders of the Ringgold Police Department handcuffed *955 the defendant and transported her to the nearby Ringgold Sheriff's Substation. In the presence of Deputy Billy J. Wiggins, Dispatcher Woodard and Bobby Conley, Officer Sanders advised the defendant of her Miranda rights. The defendant told him that she understood her rights.
In response to Deputy Wiggins' inquiry as to what had happened at the Edwards residence that night, the defendant stated she had been to the cemetery and decided to go "whip Kathy Edwards' a." She further stated that she had intended to do so for a long time and she had taken the knife to use on Mr. Edwards if he was at home. The defendant also told the officers that she and Mrs. Edwards had words at the door, and that Mr. Edwards grabbed her when she was trying to get at his wife. She claimed that she pulled the knife on him because he was trying to break her neck.
Officer Sanders sent Mr. Conley to his car to obtain a small tape recorder. He tested the recorder, turned it on, and placed it in his pocket while the defendant was standing beside him. After filling out the arrest report, Officer Sanders and Deputy Wiggins took the defendant back to the Edwards residence to get several items from the defendant's car which she requested. Unable to find the defendant's briefcase, they then stopped at her son's trailer home where the items were located. They then transported the defendant to the Arcadia jail.
During the course of the automobile ride to Arcadia, the defendant was very talkative. She made several inculpatory statements. These inculpatory statements were recorded by the tape recorder in Officer Sanders' pocket.
On September 11, 1987, a bill of information was filed, charging the defendant with aggravated burglary, a violation of LSA-R. S. 14:60.[1] The defendant was tried on this charge February 16-18, 1988. A twelve-person jury unanimously found the defendant guilty as charged.
On April 5, 1988, the trial court denied the defendant's motions for post conviction judgment of acquittal and for a new trial. On the same day the trial court sentenced the defendant to serve fifteen years at hard labor.
The defendant appealed her conviction and sentence. She assigned four errors, but in brief, she makes three additional arguments. They are, in the order in which they will be addressed: (1) the trial court erred in refusing to suppress the defendant's taped statements; (2) the verdict rendered was contrary to the law and evidence; (3) the trial court erred in denying the defendant's motion for mistrial during the prosecution's opening statement; (4) the trial court erred in allowing the state to interrupt the defendant's opening statement; (5) a juror failed to reveal on voir dire that she allegedly had a close personal relationship with a Bienville Parish Sheriff's Deputy; (6) any other errors patent on the face of the record; and (7) the trial court erred in imposing an excessive sentence.

SUPPRESSION OF STATEMENT
The defendant assigns as error the trial court's refusal to suppress the defendant's tape recorded statement which she made to Officer Sanders and Deputy Wiggins shortly after the incident occurred and after she had been placed under arrest. She argues that the taped statement should have been suppressed because it was not a knowing, intelligent or voluntary statement, and the tape recording was not the best evidence of the statement.
The defendant contends that the officers did not tell her that they would use the statements against her. She further argues that the confession was "subtly induced" because of her former friendship with Officer Wiggins and her traumatized emotional state.
Among the inculpatory statements made by the defendant on the tape recording *956 were her declarations that she was not sorry for what she had done, that her actions were premeditated, and that she had been planning the incident since the suicide death of her son, an event for which she apparently blamed Mrs. Edwards. She also made several threats against the Edwards family and stated that she would "get" them in the future.
Before the state may introduce a confession into evidence, it must affirmatively show that the statement was freely and voluntarily given. The statutorily mandated test for voluntariness "is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menace, threats, inducements or promises." LSA-R.S. 15:451; LSA-C.Cr.P. Art. 703; State v. Jackson, 381 So.2d 485 (La.1980); State v. Terracina, 430 So.2d 64 (La.1983) State v. Maiden, 463 So.2d 848 (La.App. 2d Cir.1985); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied 508 So.2d 65 (La.1987).
It must also be established that an accused who makes a confession during custodial interrogation was first advised of her Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The question of voluntariness of a confession must be determined by the trial judge from the facts and circumstances of the particular case. State v. Serrato, 424 So.2d 214 (La.1982). His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless unsupported by the evidence. State v. Maiden, supra; State v. Mills, supra.
Emotional distress is not grounds for rendering a confession inadmissible unless it is so severe that the party confessing is unable to voluntarily do so. State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), writ denied 446 So.2d 315 (La.1984); State v. Wiley, 513 So.2d 849 (La.App. 2d Cir. 1987), writ denied 522 So.2d 1092 (La.1988).
In State v. Vinet, 529 So.2d 1334 (La. App. 5th Cir.1988), the defendant contested the admissibility of his inculpatory statements even though he signed a Miranda rights sheet before making a formal statement. He claimed that he was "shook up" at the time and did not know what it meant. A police detective reported that the defendant continuously volunteered details of the crime while being transported by the police and that he had to be told to stop talking. The court in that case found that the defendant's "self-serving testimony was overwhelmingly disproved by each officer's testimony concerning the voluntary nature of the statement."
Such is the case in the present situation. The two officers testified the defendant was properly advised of her Miranda rights and that she stated that she understood those rights. While there was some evidence the defendant had consumed beer with her meal that night, the officers testified that she exhibited no signs of intoxication. The defendant herself testified that she did not believe she was under the influence of alcohol the night of the offense. The officers also testified that the defendant was not hysterical and she was sufficiently rational to exhibit concern for her granddaughter, the location of her briefcase, and the condition in which she left her son's trailer earlier in the evening.
The defendant testified that she did not recall any conversation about her right to counsel or about her statements being used against her. However, she also testified that she was not tricked into making the statements, nor was she forced to talk. She stated that she was just "rattling on" and that she spoke of her own free will.
In light of the foregoing, we find no error in the trial court's ruling that the defendant's statements were made freely and voluntarily. The defendant's arguments about the alleged involuntary nature of the statements are without merit.
The defendant also contends that the tape recording played to the jury was not the best evidence of the statements made. She bases this contention on the fact that the tape recorder was not in operation the entire time the officers were *957 transporting the defendant to Arcadia. The defendant also argues that she was prejudiced by the playing of the tape because it demonstrated her demeanor on the night of the offense. She complains that no tapes were admitted into evidence that showed equally the state of mind of the victims, the vulgar statements they allegedly made to her and their ill treatment of her in holding her upside down on the couch.
The best evidence of the tape recorded statement is the unaltered tape. State v. Auzenne, 305 So.2d 507 (La.1974); State v. Coleman, 486 So.2d 995 (La.App. 2d Cir. 1986), writ denied 493 So.2d 633, 634 (La. 1986); State v. Oliver, 499 So.2d 295 (La. App. 1st Cir.1986), writ denied 505 So.2d 56 (La.1987); State v. Joe, 502 So.2d 270 (La. App. 3rd Cir.1987).
The probative value of the playing of the tape greatly outweighed any prejudice suffered by the defendant. Also, we find that the lack of any recording of the victims is irrelevant.
This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE
The defendant also asserts that the state failed to prove two of the elements of the offense of aggravated burglary. Consequently, she claims that the verdict rendered by the jury was contrary to the law and the evidence.
LSA-R.S. 14:60 defines aggravated burglary as:
... the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
The defendant argues that the evidence did not establish that there was an "unauthorized entry of an inhabited dwelling" or that she had "the intent to commit a felony."
In reviewing sufficiency of evidence to support a conviction, the reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded, this statutory rule is not a separate test from the Jackson standard and does not establish a stricter standard of review in circumstantial evidence cases. Rather, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Arrington, 514 So.2d 675 (La.App. 2d Cir.1987).
Where there is conflicting testimony in factual matters, the issue of credibility of witnesses is within the sound discretion of the trier of fact and should not be disturbed on review unless clearly contrary to the evidence. State v. Hoyt, 464 So.2d 841 (La.App. 5th Cir.1985).
In asserting that the state failed to prove that she made an "unauthorized entry of an inhabited dwelling," the defendant claims that the atrium at the Edwards home was not a part of the dwelling such that her passage through it to the French doors leading into the living room could be considered an "unauthorized entry." The defendant also asserts that she had the implied consent of the victims to enter through the French doors into the living room and that the state presented no physical evidence of forced entry.
In the case of a private dwelling a person must have the consent of an occupant or an occupant's agent to constitute a defense to a charge of "unauthorized" entry. This *958 consent must be given by a person with authority and capacity to consent. The consent must be voluntary and intelligent, that is, based on reasonable understanding of the identity and purpose of the intruder. State v. Lozier, 375 So.2d 1333 (La.1979).
Mrs. Edwards testified that both the exterior storm door of the plant room and the French doors between the plant room and the living room were "probably" locked. She testified that she routinely checked all the doors before retiring, with the exception of the storm door which was never used.
Both Mr. and Mrs. Edwards contradicted the defendant's statement that Mr. Edwards opened the French doors. Even according to the defendant's version, it is obvious that the Edwards couple did not voluntarily and intelligently consent to any entry by the defendant. The defendant testified that when Mr. Edwards asked what she wanted she was still in the plant room, and at that point she walked into the living room and said "There she is," referring to Mrs. Edwards, whom she promptly attacked. Obviously, the Edwardses did not consent to her entry. They simply were unable to respond quickly enough to the defendant's actions to keep her out of their living room.
In reviewing the sufficiency of evidence, we must examine the evidence in the light most favorable to the prosecution. Although the defendant was not a stranger to Mr. and Mrs. Edwards, they did not invite her to their home, nor did they invite her to enter, particularly considering the late hour, their prior relationship with the defendant, and the defendant's purpose in coming there. The testimony of the Edwards couple clearly established that the defendant forced her way into their home without their permission. The record does not show that they consented to her entry. Under all these circumstances, we conclude that the defendant made an "unauthorized entry" of the inhabited dwelling occupied by the Edwards family.
Having found that the defendant's entry through the French doors and into the living room was unauthorized, it is unnecessary for this court to determine whether the plant room was part of the dwelling or an independent structure under LSA-R.S. 14:60.
The defendant also argues that the state failed to prove that she intended to commit a felony at the moment of entry. To the contrary, she claims she only intended to commit a misdemeanor, i.e., a simple battery upon Mrs. Edwards.
The intent to commit a felony may be inferred from the circumstances of the transaction. See LSA-R.S. 15:445.
Here, the defendant went to the Edwards home, driven by her belief that Mrs. Edwards had somehow contributed to the suicide death of the defendant's teenage son the year before and that Mrs. Edwards was then contributing to the problems of another of her sons. When the defendant entered the Edwards' home, she was armed with a fillet knife in a scabbard, which she wore tucked in the belt of her dress. By the defendant's own admission, she brought the knife in from her car for possible use on Mr. Edwards, whom she claimed to fear. The obvious inference from the defendant's actions was that if Mr. Edwards was present and attempted to prevent the defendant from carrying out her criminal desire to physically injure his wife, the defendant was prepared to likewise injure Mr. Edwards.
Mr. and Mrs. Edwards testified the defendant first pulled the knife on Mrs. Edwards after Mrs. Edwards successfully broke free of the defendant's grasp. They further testified the defendant then stabbed Mr. Edwards as he sought to protect his wife and subdue the defendant.
The jury obviously chose to believe the testimony of Mr. and Mrs. Edwards over that of the defendant, who claimed that the stabbing of Mr. Edwards was purely a measure of self-defense. The jury could have reasonably inferred that the defendant intended to kill, or to commit aggravated battery upon, Mr. or Mrs. Edwards when she entered their home armed with a knife. The jury could have concluded that her actions actually constituted the attempted *959 second degree murder of Mr. or Mrs. Edwards, or aggravated battery upon Mr. Edwards, whom she stabbed. Additionally, even had the defendant only intended to beat Mrs. Edwards, such conduct could have constituted second degree battery, a violation of LSA-R.S. 14:34.1, which is also a felony.
We are unable to say that the jury was clearly wrong in its evaluation of the witnesses' credibility or in the inferences it drew from the defendant's actions.
This assignment of error is without merit.

MOTION FOR MISTRIAL
The defendant argues in brief that the trial court erred in denying her motion for mistrial after the prosecutor referred in his opening statement to other crimes committed by the defendant. While discussing the element of "intent to commit a felony" in the offense of aggravated burglary, the prosecutor referred to attempted second degree murder and aggravated battery.
We find the defendant's argument to be meritless. LSA-C.Cr.P. Art. 770(2) mandates a mistrial if the district attorney refers to "[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible..."
There are exceptions to the prohibition of reference to other crimes and included among those are offenses admissible as part of the res gestae and evidence admissible to establish a motive for the commission of the crime charged. State v. Willis, 510 So.2d 411 (La.App. 2d Cir.1987). Obviously, offenses which are elements of the crime for which the defendant is on trial are likewise excluded from this prohibition.
The state referred to attempted second degree murder and aggravated battery only in the context of the offense for which the defendant was on trial, aggravated burglary. Evidence of these offenses was admissible at the defendant's trial. As it was necessary for the state to mention these crimes to prove the defendant's intent to commit a felony, an essential element of aggravated burglary, and thus carry its burden of proof, we find no error in the trial court's denial of the motion for mistrial.
This argument is meritless.

OBJECTION DURING DEFENSE COUNSEL'S OPENING STATEMENT
In brief, the defendant requests a new trial because the trial court allowed the state to interrupt the defendant's opening statement with an "innocuous" objection. During the course of his opening statement, defense counsel stated that his client had been in jail for six months and that he had been appointed to represent the defendant because she was unable to afford private counsel. The state objected, asserting that defense counsel was going beyond the scope of a proper opening statement and that he was attempting to play upon the sympathy of the jury. The defendant argues on appeal that the state harassed her by interrupting "at a very important point causing irreparable damage to the defense's right to persuade the jury in its favor."
The scope of the defendant's opening statement is confined to an explanation of the nature of the defense and the evidence which would be used in an attempt to prove the defense. State v. Spencer, 257 La. 672, 243 So.2d 793 (1971), overruled on other grounds 347 So.2d 221 (La.1977); State v. Burnette, 337 So.2d 1096 (La. 1976). The trial judge has wide discretion in controlling the scope and extent of the opening statement. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La.1984).
We find no error in the trial court's action in sustaining the state's objection. At any rate, when the objection was made, defense counsel stated that the reference "was a fleeting statement and I was through and moving on." The trial court did not abuse its wide discretion and no prejudice has been shown.
This contention is meritless.

*960 ALLEGED JUROR IMPROPRIETY
The defendant asserts in brief that one of the jurors, Ida McCarter, had a close personal relationship with a Bienville Parish Sheriff's deputy which she failed to disclose to the court. The defendant requests that the case be remanded for the taking of evidence on this point. Defense counsel concedes that he failed to inquire on voir dire about relationships between prospective jurors and police officers.
Having failed to raise the issue at trial, and failing to allege here or show any misconduct on the part of the juror, the defendant has presented nothing for this court to review.
Further, we note that the jury voted unanimously to convict the defendant. It was only necessary for ten of the twelve jurors to concur to render a verdict. LSA-C.Cr.P. Art. 782. Thus, Ms. McCarter's vote was not necessary for conviction.
The defendant has failed to show that under the circumstances she was prevented from obtaining a fair trial. State v. Duplissey, 529 So.2d 1379 (La.App. 2d Cir. 1988).

PATENT ERROR
The defendant requests that we review the record for any errors patent on the face of the record. The record demonstrates that the defendant was sentenced on April 5, 1988, immediately after the trial court denied her motions for post verdict judgment acquittal and for a new trial. LSA-C.Cr.P. Art. 873 provides, in pertinent part, "If a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." We observe no evidence in the record that the defendant waived this delay.
However, the defendant does not argue that she was actually prejudiced by the trial court's failure to observe this twenty-four hour waiting period. Such failure constitutes harmless error where the defendant does not show actual prejudice as a result of the error. See State v. White, 404 So.2d 1202 (La.1981); State v. Wilson, 469 So.2d 1087 (La.App. 2d Cir.1985), writ denied 475 So.2d 778 (La.1985).

EXCESSIVE SENTENCE
The trial court sentenced the defendant to serve fifteen years at hard labor, one-half the maximum sentence of thirty years at hard labor provided for aggravated burglary in LSA-R.S. 14:60. In her final assignment of error, the defendant argues that her sentence is excessive. We find merit in this contention.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La. 1983)
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App. 2d Cir.1983).
*961 A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider whatever factors and evidence are deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir. 1984); State v. Tully, supra.
In articulating its reasons for sentencing, the trial court discussed the forty-five-year-old defendant's background. She had an eleventh grade education when she married Mr. Edwards at the age of seventeen. (She later completed high school.) They had three sons, the youngest of whom committed suicide at the age of fifteen in 1986. The defendant and Mr. Edwards divorced in 1976. In 1980, the defendant married again. This marriage ended in divorce in 1984. She married a third time; the couple separated only eight months later.
The defendant has been employed as a bookkeeper. She has also worked in a university library and in a bank. In August, 1987, the defendant was hired as a clerical worker in the psychiatric center of the Huntsville Penitentiary.
The trial court found that a probated sentence would be inappropriate because there was an undue risk of the defendant harming Mr. Edwards. The trial judge found that the defendant, who entered the victim's home with a knife, intended to inflict serious injury. The trial court found that there was no provocation for the offense, and that the defendant showed no remorse. Further, the court was concerned about the defendant's violent nature and that she was capable of further acts of violence. However, the trial court found that the defendant's lack of a prior criminal record mitigated in her favor. Thus, it imposed a sentence of one-half the maximum allowed.
Although the trial judge articulated his reasons for sentence as required by LSA-C.Cr.P. Art. 894.1, nevertheless, upon review, we conclude that the sentence imposed is unconstitutionally excessive. We are further persuaded that the defendant's sentence is excessive by our examination of other cases involving sentences for aggravated burglary.
In State v. Roberts, 522 So.2d 1237 (La. App. 4th Cir.1988), a twenty-year-old construction worker was sentenced to fifteen years at hard labor for aggravated burglary. The court in that case observed that the defendant, who was also sentenced to twenty years at hard labor for forcible rape as a result of the same incident, had a record of several prior arrests. In State v. Robinson, 485 So.2d 156 (La.App. 2d Cir. 1986), the defendant, who had a record of three prior felony convictions, was sentenced to fifteen years at hard labor for aggravated burglary. In that case, the defendant held a knife to the victim's throat, but the victim was able to escape uninjured. The court there found that the defendant's conduct was likely to reoccur, that the defendant was in need of correctional treatment, and that his conduct threatened serious bodily harm.
In State v. Atley, 470 So.2d 621 (La.App. 1st Cir.1985), the defendant received a sentence of fifteen years at hard labor for aggravated burglary, along with a consecutive sentence of fifteen years for a related charge of attempted aggravated rape. The defendant, who had no previous criminal record, pushed his way into the apartment of the randomly chosen victim, brutally beat her about the head and face, tore off articles of her clothing, and attempted to rape her. In State v. Kenney, 516 So.2d 175 (La.App. 4th Cir.1987), the defendant broke into the victim's residence and ransacked her belongings. He then awoke the *962 victim, held a knife to her throat and threatened to kill her before being forced to flee. The trial court found the defendant's "heinous crime" warranted a substantial penalty and sentenced him to ten years at hard labor.
In the above cited cases, defendants who had significant previous criminal records or whose criminal activities were worse than those of Mrs. McKnight were sentenced to fifteen years at hard labor, and, in one case, to less, for aggravated burglary.
In considering the circumstances of the present case, we particularly note the defendant's obvious emotional problems involving her hostility toward the Edwards family and her unresolved feelings concerning her son's suicide. The evidence demonstrates that the defendant's conduct was, to a great degree, a result of these emotional problems, misperceptions, and stresses. These factors obviously failed to justify the defendant's criminal behavior. However, they do serve to mitigate in her favor against the need for prolonged incarceration.
After careful examination of the record, it is clear that the trial court erred in imposing a sentence of fifteen years at hard labor. Although this was a crime of violence, serious physical injuries did not result. Nevertheless, all crimes of violence are serious and the sentence to be imposed must be carefully tailored to fit the defendant and the crime, and to give due consideration to the protection of the public. In this case, the crime was not committed in such a manner as to justify such a mid-range sentence under the statute. We see no justification for the imposition of a sentence of fifteen years in state prison for this forty-five-year-old defendant, who had no prior criminal record and who had a fairly stable employment history, but who was obviously under emotional stress at the time the offense occurred. We cannot conclude that this offender and this offense merited the sentence imposed. It shocks our sense of justice.
We find the defendant's sentence to be excessive. We therefore vacate the sentence and remand the case for reconsideration and imposition of a non-excessive sentence in compliance with this opinion. Furthermore, the sentencing judge should consider whether a sentence could be fashioned which might address the defendant's apparent need for psychiatric evaluation and possible treatment.

CONCLUSION
The defendant's conviction is affirmed. However, the defendant's sentence is vacated and the matter is remanded to the trial court for resentencing in compliance with this opinion.
CONVICTION AFFIRMED. SENTENCE VACATED. REMANDED FOR RESENTENCING.

ON APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, HIGHTOWER, HALL and NORRIS, JJ.
Rehearing denied.
NOTES
[1] The defendant was also charged by separate bills of information with attempted second degree murder, violations of LSA-R.S. 14:27 and 14:30.1, and aggravated battery, a violation of LSA-R.S. 14:34.