I,KIRBY, Judge.
STATEMENT OF THE CASE
Defendant Lekenda Dawson was charged by bill of information on July 1, 1998 with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A) (Count 1), and possession of a dangerous weapon while in possession of a controlled dangerous substance, a violation of La. R.S. 14:95(E) (Count 2). Defendant pleaded not guilty at her July 6, 1998 arraignment. The trial court denied defendant’s motion to suppress the evidence and found probable cause on August 12, 1998. Following a bench trial, the trial court found defendant guilty of possession of cocaine as to count one, and possession of a firearm while in possession of a controlled dangerous substance (guilty as charged) as to count two. On May 27, 1999, the trial court sentenced defendant to thirty months at hard labor on count one, and five years at hard labor on count two. The trial court granted defendant’s oral motion for appeal. The State filed a habitual offender bill of information that same date, to which defendant pleaded guilty. The trial court adjudicated defendant a second felony habitual offender, vacated the original sentence imposed on count one, and resentenced defendant to thirty months at hard labor.
I ¡.FACTS
New Orleans Police Officer Robert Fer-rier testified that on June 3, 1998 he and his partner, Officer Kyle Hinrichs, went to 2011 Martin Luther King Boulevard seeking Todd Moore, wanted for attempted murder, and defendant, who was wanted for theft. Defendant answered the door and was placed under arrest. Defendant was advised of her rights and, after admitting that she had lived in the residence for approximately two or three months, signed a consent to search form. The officers recovered a black bag containing five diapers, a 9mm handgun, a .380 caliber handgun, sixteen zip-lock packets of cocaine, a bag of marijuana, and eighty-nine dollars in currency. Defendant admitted that the cocaine and loaded guns belonged to her, and said she was selling the cocaine for five dollars a bag, which, Officer Ferrier speculated, accounted for the fourteen five-dollar bills found with the drugs and guns.
New Orleans Police Officer Kyle Hin-richs’ testimony essentially tracked that of Officer Ferrier. He said defendant admitted that she had been residing in the residence for approximately two months, that the cocaine belonged to her, that she was selling it for five dollars a packet, and that she kept the firearms in her residence to prevent robberies. Defendant’s three-month and three-year old children were in the residence, along with a sixteen-year old male juvenile. Officer Hinrich noted that defendant’s address as listed on her booking sheet was “2011 Martin Luther King.”
Karen Kewanda Dawson, defendant’s sister, testified that she was living at 2011 Martin Luther King Blvd. on June 3, 1998, and was in front of her residence when police arrived. She said that immediately prior to this time, some ten to twenty people had been in and out of her residence, as she was planning to have a | ¡¡card game. She said defendant and her two children, the male juvenile, and Sabrina Jackson were in the residence at the time police arrived. Defendant and Ms. Jackson were in the bedroom, while the male juvenile was in the living room. The police arrived, walked into the residence, grabbed the male juvenile, and ran a computer check on his name. Ms. Dawson said she told police that it was her house. The black bag belonged to her; she kept diapers in it for defendant’s baby, whom she kept on Fridays and Saturdays while defendant went out. She did not know what the bag contained that night, other than diapers and one hundred plus dollars from the card game. Her boyfriend, who had been killed by the time of trial, lived *265 with her at that time. She said that if there had been any guns in the house, they had been left there by either her boyfriend or a visitor. Ms. Dawson admitted that defendant used to live at the address with their mother, between 1996 and 1997, but said defendant and their mother had moved.
Michelle Dawson, defendant’s cousin, testified that on June 3, 1998 she was living in the Magnolia Project with defendant and defendant’s mother, not at 2011 Martin Luther King Blvd., where, she claimed, “Kay” Dawson lived.
Defendant testified that on June 3, 1998 she went to her sister’s residence at 2011 Martin Luther King Blvd. to play cards. Police arrived, checked some people on the front step next door, then opened her sister’s door and pulled the male juvenile outside. They returned and asked her name and asked if there were any drugs in the house. She replied in the negative. She claimed a police officer informed her that if she did not sign the consent to search form he would make sure she did not see her children any more. Defendant, who said she only went to the eighth grade in school, was unable to read the form, and police did not explain it to her, but she signed it anyway. She admitted having previously lived in the [ residence with her mother, but said she moved in 1997. She claimed to have been living at 2815 Freret Street at the time of her arrest, and presented a rent receipt listing her name and that address. She denied ever telling police that she knew the guns or narcotics were in the bag. Defendant admitted on cross examination that on the date reflected by rent receipt, June 12, 1998, she was incarcerated, but claimed that her mother paid the rent for her. Defendant stated that there were ten and twenty-dollar bills among the currency contained in the bag, and that more than eighty-nine dollars had been there. Defendant admitted that police gave her children to her mother, as well as the keys to “the house.” She said she did not have keys to the house, and that the locks at 2011 Martin Luther King Blvd. had been changed after she moved. She thought the deputies booking her for the instant offenses probably listed the address where she resided at the time of a prior theft conviction, 2011 Martin Luther King Blvd., instead of the new address she gave them, 2815 Freret Street.
The trial court questioned defendant as to why, if she could not read, she knew what the rent receipt stated. Defendant responded that her mother told her when the court inquired why police gave the house keys to her mother, if it was her sister’s apartment defendant stated she did not know. Finally the Judge asked why her children were given to her mother, if her sister regularly took care of them. Defendant related that it was because she wanted them to go with her mother.
It was stipulated that a rebuttal witness, Officer Rodolfo, would testify that he received a telephone call at the police station and, based on that call, he spoke with Officers Henrichs and Ferrier and gave them the names of Todd Moore and defendant, “to run through the computer at the address of 2011 Martin Luther King.”
| .ERRORS PATENT
A review of the record reveals two errors patent. The May 27, 1998 sentencing transcript reflects that the trial court did not restrict defendant’s right to the benefit of parole, probation, or suspension of sentence as to the habitual offender sentence for possession of cocaine. However, a minute entry from the May 27th sentencing states that the thirty-month habitual offender sentence was to be without benefit of parole, probation or suspension of sentence, as does an August 2nd corrected minute entry. La. R.S. 40:967(0(2) does not limit the right to parole, probation or suspension of a sentence for possession of cocaine. However, La. R.S. 15:529.1(G) provides that any habitual offender sentence shall be without the benefit of probation or suspension of sentence. *266 Therefore, defendant’s habitual offender sentence must be amended to delete the denial of the benefit of parole.
Pursuant to La. R.S. 14:95(E), a sentence imposed on a defendant convicted of possession of a firearm while in the possession of a controlled dangerous substance shall be without the benefit of probation, parole or suspension of sentence. The trial court failed to limit defendant’s right to any of those benefits when sentencing him on the firearm count. Thus, the sentence was illegally lenient. However, this court will not correct an illegally lenient sentence on appeal where the State does not raise the issue. State v. Jones, 99-0861, p. 6 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 35; State v. Mims, 97-1500, p. 24 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 61. The State did not raise the issue. Therefore, the sentence on the firearm count will remain undisturbed.
I «ASSIGNMENT OF ERROR
By his sole assignment of error, defendant claims the trial court abused its discretion in denying her motion for a continuance so that she could secure the presence of a subpoenaed defense witness.
After the trial court had concluded its examination of defendant, defense counsel stated that she had talked to a subpoenaed witness, Sabrina Jackson, on the telephone, and Ms. Jackson informed her that she was “unable” to get to the trial. Defense counsel then stated:
I mean since we have had a Judge Trial maybe we can make some — hold this open and make some attempt to get her.
The trial court declined to hold the trial open, specifically citing the last-minute nature of the request. Defendant failed to object to the ruling. A defendant cannot avail herself of an alleged error unless she made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A); State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Spain, 99-1956, p. 11 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, 886; State v. Brooks, 98-0693, p. 9 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 818. Accordingly, this error is not preserved for review.

CONCLUSION:

For the foregoing reasons, defendant’s convictions are affirmed. Her sentence on Count 2 is likewise affirmed; but her sentence on Count 1 as a habitual offender is amended to delete the restriction denying the benefit of parole. In all other respects, the sentence on Count 1 is affirmed.
^CONVICTION AFFIRMED; SENTENCE ON COUNT TWO AFFIRMED; SENTENCE ON COUNT ONE AMENDED AND AFFIRMED AS AMENDED.