LLEON A. CANNIZZARO, JR., Judge.
. The defendant, Gregory Nunnery, was convicted of unauthorized entry of an inhabited dwelling. He was also found to be a habitual offender and sentenced to serve six years at hard labor as a third felony offender. He is now appealing his conviction.
*68 STATEMENT OF THE CASE
Mr. Nunnery was charged in a bill of information with simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. He pled not guilty at his arraignment. After a preliminary hearing, the trial court found probable cause to charge him, and his motion to suppress a photo identification was denied. After a trial on the merits, a jury found him guilty of the lesser offense of unauthorized entry of an inhabited dwelling, a violation of La. R.S. 14:62.3.
The State of Louisiana then filed a bill of information charging Mr. Nunnery as a habitual offender under the Habitual Offender Law, La. R.S. 15:529.1. Mr. Nunnery’s sentencing hearing in connection with the conviction of unauthorized entry of an inhabited dwelling and the trial on the habitual offender charge were |2both held the same day approximately three months after the verdict against him was rendered. Mr. Nunnery was originally sentenced to four years in the custody of the Louisiana Department of Corrections with full credit for the time he had already served.
After Mr. Nunnery was sentenced, the trial court denied Mr. Nunnery’s motion for a new trial and his motion for post verdict judgment of acquittal. A trial was then held on the habitual offender charge. Mr. Nunnery was found guilty as charged of being a third offender under the Habitual Offender Law. His original sentence for the crime of unauthorized entry of an inhabited dwelling was then vacated, and he was sentenced to serve six years at hard labor in the custody of the Louisiana Department of Corrections with full credit for the time he had already served.
STATEMENT OF FACTS
Mr. Nunnery was originally charged with burglarizing the home of Gina Martin. At the trial Ms. Martin testified that she had known Mr. Nunnery for almost twenty years, that she considered him to be a family friend, and that she often saw him two to three times a week. In the past she had allowed him to sleep at her house when he was “fixing things in her home” and had no other place to sleep.
Mr. Nunnery had been at Ms. Martin’s house working on a broken lock on Ms. Martin’s front door, and he was supposed to hang some Halloween decorations at her home. A friend had given Mr. Nunnery a ride to Ms. Martin’s house that day |3in a “blue F150”.[1] Because the projects Mr. Nunnery had undertaken were not completed the day he arrived, he spent the night at Ms. Martin’s house. The next morning she had to take her children to a doctor’s appointment. When Ms. Martin and her children left her house for the appointment, she also took Mr. Nunnery with her. She planned to drive him to Port Street in New Orleans to “a place he usually sleeps sometimes,” but Mr. Nunnery wanted to get out of the car about a half of a block before she got to Port Street, so she let him out of her car there. Although Mr. Nunnery was supposed to return to Ms. Martin’s house that afternoon to complete the work he was doing for Ms. Martin, he never returned. She did not see him again until the trial.
The reason that Ms Martin took Mr. Nunnery with her when she and the children left for their appointment was that she never permitted him to be in her house when she was not there. Ms Martin testified that Mr. Nunnery knew that he did not have permission to be in her house when she was not there.
*69 When Ms. Martin and her children returned home later that morning, the children noticed that their Playstation and X-Box video game systems were missing. The game systems had been on top of the television in the living room near the area where Mr. Nunnery had been working earlier. Additionally, a DVD player and some video games were missing. After the items were discovered to be missing, Ms. Martin called the police.
|4Ms. Martin testified at the trial that the lock on her front door was broken and that, consequently, the door could be opened easily without a key. She also said that a large dog, a Rottweiler, was in her house when she left her house to take her children to their appointment.
Ms. Martin said that her dog was very aggressive with strangers. Because of that, she was not afraid to leave her home unattended while the lock on her front door was broken. She also said that the dog was familiar with Mr. Nunnery, who had known the dog since he was a puppy, and that the dog was friendly to him.
One of Ms. Martin’s neighbors, sixteen-year old Jovana Landry, who had known Ms. Martin for more than two years, testified at the trial. She stated that on the morning that the video game systems were discovered to be missing, she had walked with her baby to a nearby store. When she passed Ms. Martin’s house on the way to the store, she saw Mr. Nunnery open the front door and enter Ms. Martin’s house. Although Ms. Martin’s car was not at her house, there was a vehicle parked near the house. Ms. Landry testified that she thought that Mr. Nunnery was going in the house “to fix something around the house because that’s what he normally do.”
Ms. Landry testified that she had spent approximately twenty minutes at the store. She further testified that when she walked past Ms. Martin’s house on her return from the store, she did not see the “green or blue looking 1500 Ram ear, a truck” that had been parked near Ms. Martin’s house, but she did notice that the door to the house was ajar. Later in the day, Ms. Landry spoke to Ms. Martin and told her that she had seen Mr. Nunnery entering Ms. Martin’s house that morning.
UMs. Landry identified Mr. Nunnery in open court at the trial. When she was questioned about the Rottweiler that lived with Ms. Martin, Ms. Landry said that if the dog did not know a person, he would bark at or snap at the person. She did not hear the Rottweiler barking when Mr. Nunnery entered Ms. Martin’s house.
New Orleans Police Department Detective Regina Williams investigated this case, and she testified at trial that she had prepared a photo lineup that she had shown to Ms. Landry. She further testified that Ms. Landry had identified Mr. Nunnery’s photograph as that of the person she saw entering Ms. Martin’s home. At the trial Ms. Landry also identified the photograph she had selected from the photo lineup as that of Mr. Nunnery, the person she saw enter Ms. Martin’s house on the day in question.
ERRORS PATENT
We have reviewed the record in this case, and we have found one error patent. La.C.Cr.P. art. 873 provides as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately. .
*70 In State v. Augustine, 555 So.2d 1331, 1334 (La.1990), the Louisiana Supreme Court held that the trial court’s failure to observe the twenty-four hour delay did not constitute harmless error even where the defendant failed to raise that issue on appeal. In Augustine, however, the defendant did challenge his sentence on appeal. The Supreme Court, therefore, held that the error in Augustine was not harmless.
| (¡In State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991), this Court discussed the Augustine case as follows:
In State v. Augustine, 555 So.2d 1331 (La.1990), the Supreme Court held that the trial court’s failure to observe the twenty-four hour delay did not constitute harmless error, even if the defendant did not raise that issue as error on appeal, where the defendant challenged his sentence on appeal. In the present case, defendant does not challenge his sentence and he does not raise as error the failure of the trial court to wait twenty-four hours before imposing sentence. Therefore, the error is harmless.
584 So.2d at 359.
In the instant case the trial court imposed the original sentence for Mr. Nunnery’s conviction of unauthorized entry of an inhabited dwelling immediately after denying Mr. Nunnery’s motions for a new trial and a post-verdict judgment of acquittal. That sentence was then vacated, and the sentence under the Habitual Offender Law was imposed. Because there is no indication in the record that Mr. Nunnery waived the delay required under La. C.Cr.P. art. 873, the failure to comply with that article is an error patent.
In the instant case, however, Mr. Nunnery has not challenged his sentence, and he does not raise as error the failure of the trial court to wait twenty-four hours before imposing sentence. Therefore, this error is harmless under this Court’s ruling in the Collins case.
ASSIGNMENT OF ERROR
Mr. Nunnery has raised a single assignment of error. He contends that there was insufficient evidence to support his conviction for unauthorized entry of an inhabited dwelling, because the evidence failed to exclude the reasonable hypothesis that Mr. Nunnery made only a limited entry into Ms. Martin’s house |7with her implied consent. He argues that Ms. Martin had agreed that he would return that day to fix her broken door. Therefore, he claims that his presence at Ms. Martin’s door does not, by itself, raise an inference of guilt.
Mr. Nunnery further contends that Ms. Landry did not know how long he was present at Ms. Martin’s house. Therefore, he argues that it would be reasonable to assume that upon finding a ride to her house, he took that opportunity to check to see whether Ms. Martin had returned home so that he could finish the work he was doing for her. He claims that he could have stepped just inside the doorway of the house to call out to anyone who might have been home and then left the house when he found no one there.
Mr. Nunnery argues that although he knew he could not be in Ms. Martin’s home when she was not present, he had a close, longstanding relationship with Ms. Martin and her family that provided an implied authorization for him to step inside her house briefly to determine whether anyone was home. Such a limited entry into Ms. Martin’s home under these circumstances would not constitute the felony of unauthorized entry into an inhabited dwelling.
Applicable Law
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that *71 the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, § 1, creates the following standard of review for federal courts reviewing a state conviction:
[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... [T]he Irrelevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
443 U.S. at 318-19, 99 S.Ct. 2781 at 2788-89, 61 L.Ed.2d 560 (footnote omitted) (citation omitted).
In State v. Mussall, 523 So.2d 1305 (La.1988), the Louisiana Supreme Court stated that “this court ... recognized that ... the Jackson holding also applies to state direct review of criminal convictions.” Id. at 1309. The Supreme Court in Mussall also recognized that the Louisiana Constitution has a due process clause “virtually identical to its Fourteenth Amendment model. La. Const. Art. I, § 2.” Id.
The Supreme Court in Mussall stated that a review of the record in a criminal case does not require the reviewing court to determine whether the reviewing court believes the evidence at the trial established guilt beyond a reasonable doubt. The Supreme Court further stated as follows:
[A] reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can.[T]he inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
523 So.2d at 1309-10 (footnotes omitted). See also State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50.
In State v. Ash, 97-2061, pp. 4-5 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 667, this Court articulated the standard of review that is applicable to a claim that | nthe evidence produced at a criminal trial was constitutionally insufficient to support a conviction. This Court stated:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld.
Mr. Nunnery was convicted of unauthorized entry of an inhabited dwelling. That crime is defined by La. R.S. 14:62.3(A) as “the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.”
Analysis
Mr. Nunnery argues that the evidence was insufficient to support his conviction, because he had agreed to return to Ms. Martin’s house later in the day to fix the front door. The fact that Ms. Martin’s car was not there would not have necessar *72 ily indicated that no one was home, because Ms. Martin’s two children did not drive. He hypothesizes that he could have simply stepped into Ms. Martin’s house, called to her, and then turned around and left the house immediately upon finding that no one was home.
The elements of the crime of unauthorized entry of an inhabited dwelling are (1) that the accused entered a dwelling, (2) that the dwelling did not belong to the accused, (3) that the dwelling was used in whole or in part as a home or place of |inabode, and (4) that the entry was not authorized. La. R.S. 14:62.3. These elements had to be proven at trial for Mr. Nunnery to be found guilty.

Entry of a Dwelling

The State presented the testimony of Ms. Landry, an eyewitness to Mr. Nunnery’s entry into Ms. Martin’s home. Ms. Landry testified that she knew Mr. Nunnery and that she saw Mr. Nunnery enter the front door to Ms. Martin’s home. She also identified Mr. Nunnery in open court at the trial. In State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50, the Louisiana Supreme Court stated that “[w]here there is no physical evidence to link a defendant to the crime charged, the testimony of one witness, if believed by the trier of fact, is sufficient support for a factual conclusion required for a verdict of guilty:’ 2000-1629, p. 9, 815 So.2d at 56 (emphasis added).

Ownership of the Dwelling

Ms. Martin testified that Mr. Nunnery often stayed overnight at her house when she thought he had no other place to sleep. She also testified that when she left the house on the morning in question, she took Mr. Nunnery with her and planned to drive him to a place on Port Street in New Orleans where Mr. Nunnery sometimes stayed. Further, Ms. Martin directly testified that the house that Ms. Landry saw Mr. Nunnery enter was “my home.” There was no evidence to show that Mr. Nunnery owned the house or that it belonged to anyone other than Ms. Martin. Based on Ms. Martin’s testimony, it was reasonable for the jury to conclude that Mr. Nunnery did not own the house he entered.

Use of the Dwelling

According to Ms. Martin’s testimony, the dwelling entered by Mr. Nunnery was used by Ms. Martin and her two children as their home. Ms. Martin described 1 ^the dwelling as a three-bedroom brick house with a living room and a kitchen. Ms. Landry’s testimony also established that Ms. Martin lived in the dwelling entered by Mr. Nunnery. Ms. Landry testified that she had been in Ms. Martin’s house a number of times. Ms. Landry was familiar with the house and described its interior in detail at the trial. Further, Ms. Martin’s daughter was Ms. Landry’s “best friend”, and Ms. Landry visited the daughter regularly. Clearly, there was sufficient evidence to convince a jury that Ms. Martin used the house that Mr. Nunnery was seen entering as her family home.

Unauthorized Entry

In State v. Lozier, 375 So.2d 1333 (La.1979), the Louisiana Supreme Court discussed the meaning of an unauthorized entry. The Supreme Court stated:
In the case of a private dwelling a person must have the consent of an occupant or an occupant’s agent to constitute a defense to “unauthorized” entry .... The consent must be voluntary and intelligent, that is, based on a reasonable understanding of the identity and purpose of the intruder. Obviously, a child who admits a total stranger would not necessarily have sufficient understanding of the circumstances of the *73 entry to give valid consent to an entry. On the other hand once a maid, friend, or employee is given general consent to enter a house at certain times, that consent will generally remain valid until revoked or the terms of the consent exceeded.
375 So.2d at 1336 (citations omitted).
We find that there was sufficient evidence presented at trial for a reasonable jury to conclude that Ms. Martin did not authorize Mr. Nunnery to enter her house when he did. Ms. Martin testified that she had never given Mr. Nunnery permission to enter her house when she was not at home, that prior to the incident in question he had never entered her house without her permission, and that he knew that she did not permit him to enter her home when she was not there.
haThe fact that a person previously had permission to enter a house does not imply that the person continues to have such authorization. In State v. Monley, 557 So.2d 319 (La.App. 4th Cir.1990), the defendant argued that because he and the victim were married at the time of the incident, his entry into his wife’s house could not have been unauthorized. Prior to their marriage the defendant had lived with the victim in the house, but she had taken the keys from him, and he had moved out of the house. Although they subsequently married, they had never lived together in the house after their marriage. This Court affirmed the defendant’s conviction of aggravated burglary, because the defendant did not reside at the house and because his wife testified that she did not give the defendant permission to enter her house when he did.
Similarly, in State v. Peterson, 623 So.2d 919 (La.App. 4th Cir.1993), the defendant, who was convicted of simple burglary, had lived in his grandmother’s house until he and his grandmother began to argue with each other. Further, the defendant owned a one-eighth interest in the house subject to his. grandmother’s usufruct. This Court, nevertheless, held that the “[defendant had no right, at the time of the incident, to enter opto, the property -without his grandmother’s permission.”, 623 So.2d at 922. (emphasis added). Consequently, his entry into his grandmother’s house was unauthorized.
Additionally, in State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, this Court held that the “relevant question ” in determining whether an entry is unauthorized is “not whether defendant could generally enter the victim’s residence, but whether this particular entry was authorized.” 99-1956, P. 7, 757 So.2d at 884. This Court in the Spain case found that the entry by the victim’s ex-boyfriend into the victim’s home was not' authorized even though the defendant’s 11sdaughter lived at the residence where she was sometimes visited by her father.. The defendant’s prior access to the house did not cause his visit to be authorized on the occasion when he entered the victim’s kitchen and attacked her and her new boyfriend’s motorcycle.
In the instant case Mr. Nunnery had been authorized to enter Ms. Martin’s house on a number of occasions, but he had never been authorized to enter her house when she was not present. On the date in question, Ms Martin had taken Mr. Nunnery with her when she left the house, because she did not want him to be there when she was gone. He was not supposed to come back to her house until that afternoon, and he was supposed to call before he returned to the house to verify that she would be home. Therefore, on the occasion in question, Mr. Nunnery had neither express nor implied authorization to enter Ms.-Martin’s home.
*74 Summary
We find that there was sufficient evidence to convict Mr. Nunnery of the crime of unauthorized entry of an inhabited dwelling. When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found that all of the elements of the crime of unauthorized entry of an inhabited dwelling were proved beyond a reasonable doubt. Therefore, Mr. Nunnery’s assignment of error is without merit.
CONCLUSION
We find that there was sufficient evidence to convict Mr. Nunnery. His conviction and his sentence are hereby affirmed.
AFFIRMED.

. Dodge Ram 1500 is the model name of a pick-up truck.