ROSEMARY LEDET, Judge.
Lin this is a criminal appeal, the defendant, Cardell Ellis, seeks review of his conviction and sentence for home invasion, a violation of La. R.S. 14:62.8. The sole issue Mr. Ellis raises on appeal is the sufficiency of the evidence to support the conviction. Finding that the district court erred in part, we remand for the imposition of the mandatory fine required by La. R.S. 14:62.8(B). In all other respects, we affirm.

STATEMENT OF THE CASE

On December 22, 2010, Mr. Ellis was charged by bill of information with home invasion of an apartment located at 1825 Clouet Street in New Orleans (the “Residence”). On January 4, 2011, Mr. Ellis pled not guilty at his arraignment. On February 8, 2011, the trial court found probable cause to substantiate the charges. On October 24, 2011, the matter proceeded to a jury trial. The jury found Mr. Ellis guilty as charged. On November 3, 2011, Mr. Ellis filed motions for new trial and post-verdict judgment of acquittal. On November 17, 2011, both motions were denied. Mr. Ellis waived all delays, and he was sentenced to five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. No fine was imposed. This appeal followed.

*946
\ STATEMENT of the facts

For several years before the incident in question, Mr. Ellis and the victim, Lakisha Bush (“Lakisha”), were engaged in a dating relationship. Although they were never married, they had a child together — a daughter, “K.B.,” who was four years old at the time of the incident. For at least some part of November 2010, Mr. Ellis stayed in the Residence with K.B.; Lakisha; Lakisha’s mother, Betty Bush (“Ms. Bush”); and Ms. Bush’s male friend, Rufus Ferdinand (“Mr. Ferdinand”). Both Ms. Bush and Lakisha acknowledged that he stayed there for at least three days before the incident. Ms. Bush and her daughter, Traynell Bush, were the only parties to the lease of the Residence. Although Mr. Ellis was not a party to the lease, in early November 2010 he paid Ms. Bush two hundred dollars to stay there temporarily until he found his own apartment.
On the morning of November 10, 2010, Ms. Bush was at the Residence; also present were K.B., Mr. Ferdinand, and Mr. Ellis. Lakisha was at work. Lakisha testified that she paid her mother to watch K.B. while she was at work. On that morning, Ms. Bush was not feeling well. She thus asked Mr. Ellis to watch K.B. for her. In response, Mr. Ellis began using vulgar and threatening language. Because of his behavior, Ms. Bush locked him out of the Residence. After Ms. Bush locked him out, Mr. Ellis called the police in order to retrieve his belongings from the Residence. According to Ms. Bush, the police came out and instructed Mr. Ellis to take his belongings and to leave the Residence.
Ms. Bush testified that not only did she lock Mr. Ellis out, but also she called Lakisha at work and asked her to come home to help with him. When Lakisha arrived home, Mr. Ellis was sitting outside the Residence on the porch drinking beer. Lakisha went inside the Residence without incident. Sometime ^thereafter, Mr. Ellis came charging into the Residence. According to Lakisha, Mr. Ellis’ forced entry occurred when Mr. Ferdinand went to put out the trash. At that time, Mr. Ellis asked Mr. Ferdinand to tell Lakisha that he wanted his belongings. As Mr. Ferdinand was coming back in the door, Mr. Ellis knocked Mr. Ferdinand down and came charging in the Residence.
Ms. Bush gave a slightly different version of Mr. Ellis’ forced entry. She testified that Mr. Ellis requested his belongings and that Mr. Ferdinand went to get them for him. As Mr. Ferdinand approached the door with the belongings, Mr. Ellis rushed through the door and knocked Mr. Ferdinand down. Ms. Bush testified that at the time Mr. Ellis’ forced entry into the Residence, he did not have permission to enter.
According to Ms. Bush, after his forced entry into the Residence, Mr. Ellis started attacking her and Lakisha. He hit Lakisha in the head with the metal part of a napkin holder. He also broke K.B.’s chair and hit Lakisha with parts from the chair. Mr. Ellis threw Ms. Bush to the bed and threatened to hit her with the metal napkin holder.[1] Thereafter, Mr. Ellis went outside and broke the driver’s side windshield on Lakisha’s vehicle.[2] The neighbors called 911.
At approximately noon on November 10, 2010, Officer Cleveland Johnson, with the New Orleans Police Department (“N.O.P.D.”), was dispatched to a domestic disturbance call at the Residence. Upon *947 arrival at the scene, Officer Johnson observed minor swelling on Lakisha’s face; however, he did not believe the injuries he observed on Lakisha’s face were consistent with her description of | ¿Mr. Ellis’ attack. Officer Johnson also observed damage to a child’s chair located inside the Residence, and a broken windshield on Lakisha’s vehicle parked outside the Residence. Officer Johnson was informed that Lakisha and Mr. Ellis had a four year old daughter together, who was also present in the Residence.
Officer Johnson testified that Mr. Ellis had scratches to his body and appeared to be intoxicated. According to Officer Johnson, at the time of his arrest Mr. Ellis gave his home address as 2544 Robert E. Lee Street in New Orleans. Office Johnson acknowledged that earlier that day he responded to a complaint from Mr. Ellis at that same location. Officer Johnson remembered speaking with Mr. Ellis in response to the complaint, but he did not recall the nature of the complaint. Nor did he prepare an incident report. Although the tape of Mr. Ellis’s 911 call (his complaint) was played in court, it did not refresh Officer Johnson’s recollection.
Following his investigation, Officer Johnson concluded that Mr. Ellis committed a domestic battery, that Mr. Ellis did not live at the Residence, and that at the time of the incident Mr. Ellis did not have permission to enter the Residence.
Erwin Williams, a N.O.P.D. complaint (911) operator, confirmed the existence of three 911 calls made in connection with the incident; those calls were made between 11:45 and 11:49 a.m. that day. Ms. Williams also identified the 911 call from Mr. Ellis, which was made around 9:48 a.m. that day. The 911 tapes were introduced into evidence.

ERRORS PATENT

The record reflects an error patent as to Mr. Ellis’ sentence. As part of the sentence for home invasion, La. R.S. 14:62.8(B) requires the imposition of a fine | r,of not more than $5,000.[3] In this case, the trial court failed to impose the mandatory fine. This court has determined that the failure to impose a mandatory fine requires that the matter be remanded for imposition of that fine. State v. Hart, 10-1614, p. 4 (La.App. 4 Cir. 11/2/11), 80 So.3d 25, 29; State v. Williams, 03-0302, pp. 3-4 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, 753. This case thus must be remanded for that purpose. No other errors patent was found.

DISCUSSION

In his only assignment of error, Mr. Ellis contends that the evidence was insufficient to support his conviction. The gist of his argument is that the State presented insufficient evidence that his entry into the Residence was unauthorized given that he paid rent to stay there.
*948 In reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18. Applying the Jackson standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, p. 9 (Laj6/29/01), 796 So.2d 649, 657 (quoting State v. Captville, 448 So.2d 676, 678 (La.1984)). The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Holmes, 06-2988, p. 34 (La.12/2/08), 5 So.3d 42, 68.
Home invasion is defined in La. R.S. 14:62.8 as “the unauthorized entering of any inhabited dwelling, or other structure belonging to another and used in whole or in part as a home or place of abode by a person, where a person is present, with the intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.” In order to convict Mr. Ellis of home invasion, the State was required to prove:
• that Mr. Ellis entered the Residence;
• that the Residence was an inhabited dwelling or a structure used in whole or in part as a home or place of abode;
• that Mr. Ellis was not authorized to enter the Residence;
• that the Residence did not belong to Mr. Ellis; and
• that Mr. Ellis acted with specific intent to use force or violence upon the person of another or to vandalize, deface, or damage the property of another.
See Cheney C. Joseph, and P. Raymond Lamonica, 17 LA. CIV. L. TREATISE, CRIMINAL JURY INSTRUCTIONS § 10.62.8 (2d ed.2011)(defining elements of home invasion offense); see also State v. Hart, 10-1614, p. 6 (La.App. 4 Cir. 11/2/11), 80 So.3d 25, 30 (holding that to convict a defendant of home invasion pursuant to La. R.S. 14:62.8, the State is required to prove that “he entered a dwelling owned by another without permission, that the dwelling was used in whole or in part as a home, that a person was present when he made the ^unauthorized entry, and that he had the intent to use force or violence upon the person or to vandalize, deface or damage the property.”)
The first two elements of the offense are undisputed: Mr. Ellis entered the Residence; and the Residence was an inhabited dwelling. Overwhelming evidence was presented at trial that Mr. Ellis used force or violence upon some of the individuals present in the Residence. Moreover, Mr. Ellis stipulated to the allegations of criminal damage to property. The fifth element thus was satisfied. The dispute is whether the third and fourth elements were satisfied — whether the Residence belonged to another and whether Mr. Ellis’ entry was unauthorized.
Disputing those two elements, Mr. Ellis argues that his entry was authorized given that he had an oral sublease with Ms. Bush for the month of November 2010. In support, he cites the undisputed fact that in the beginning of November 2010 he paid Ms. Bush two hundred dollars in rent to stay there. Since there was no specific term agreed upon by the parties, he contends that the duration of the sublease was month to month. La. C.C. *949 art. 2680.[4] He thus contends that the sublease did not expire until the end of November 2010. It follows, Mr. Ellis submits, that his entry on November 10, 2010, was authorized. This contention is not supported by the record.
| sUnder the jurisprudence, the fact that a person previously had permission to enter a house does not imply that the person continues to have such authorization.[5] State v. Nunnery, 04-1560, p. 12 (La.App. 4 Cir. 12/8/04), 891 So.2d 67, 73; see also State v. Cojoe, 00-1856 (La.App. 4 Cir. 3/21/01), 785 So.2d 898.[6] The relevant inquiry is “not whether defendant could generally enter the victim’s residence, but whether this particular entry was authorized.” State v. Spain, 99-1956, p. 7 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, 884.[7] The inquiry in this case is thus whether Mr. Ellis’ particular entry into the Residence at the time of the incident was authorized.
The record supports the jury’s implicit finding that Mr. Ellis’ entry was unauthorized. Although Mr. Ellis stayed at the Residence for several (at least three) days before the incident and had belongings there, Ms. Bush testified that he did not have permission to enter the Residence when he barged into it. At that point, Ms. Bush had locked him out. Moreover, she testified that he only had her consent to stay there when he was not drinking and not being disruptive. Thus, when Mr. Bush barged into the residence, he did not have consent.
As to the alleged verbal sublease, the record does not support Mr. Ellis’ contention that he had an open-ended agreement to occupy the Residence. | flAddressing the duration of the agreement for him to stay there, Ms. Bush testified that “it wasn’t like no certain length of time, but he was supposed to be out the apartment I believe at the end of the month because he was about to receive his apartment.” Lakisha likewise testified that Mr. Ellis needed somewhere to stay because he was sleeping in his car. She further testified that her mother felt bad for him and that he *950 told her mother that he would give her two hundred dollars if she would let him stay. She still further testified that her mother asked him how long he needed a place to stay and that he responded that “it was going to be like a week or two.” The testimony presented at trial thus establishes that Mr. Ellis was only authorized to stay at the Residence until he found his own apartment.
Mr. Ellis acknowledged in his brief that he had found his own apartment by the date of the incident. He further acknowledged that the purpose of his 911 call earlier on the day of the incident was to retrieve his belongings from the Residence. According to Ms. Bush, the officer instructed Mr. Ellis to take his belongings and to leave the Residence. At the time of his arrest, Mr. Ellis provided a different home address to the officer; and the arresting officer concluded that he did not live at the Residence. Considering the evidence in the light most favorable to the prosecution, the evidence was sufficient to convict Mr. Ellis on the charge of home invasion.

DECREE

For the foregoing reasons, this matter is remanded for imposition of the mandatory fine required by La. R.S. 14:62.8(B). In all other respects, the defendant’s conviction and sentence are affirmed.
AFFIRMED IN PART; REMANDED IN PART

. At trial, Lakisha identified the metal paper towel holder and K.B.'s chair, which she testified Mr. Ellis used in striking her.

. Mr. Ellis’ attorney stipulated that Mr. Ellis committed criminal damage to property.

. La. R.S. 14:62.8(B) provides:
B. (1) Except as provided in Paragraph (2) of this Subsection, whoever commits the crime of home invasion shall be fined not more than five thousand dollars and shall be imprisoned at hard labor for not less than five nor more than twenty years; at least five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
(2) Whoever commits the crime of home invasion when, at the time of the unauthorized entering, there is present in the dwelling or structure any person who is under the age of twelve years, is sixty-five years of age or older, or who has a developmental disability as defined in R.S. 28:451.2, shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less than ten nor more than twenty-five years. At least ten years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

. La. C.C. art. 2680 provides:
If the parties have not agreed on the duration of the term, the duration is established in accordance with the following rules:
(1) An agricultural lease shall be from year to year.
(2) Any other lease of an immovable, or a lease of a movable to be used as a residence, shall be from month to month.
(3) A lease of other movables shall be from day to day, unless the rent was fixed by longer or shorter periods, in which case the term shall be one such period, not to exceed one month.

. The jurisprudence of this state construing the offense of home invasion is scant. Thus, the jurisprudence construing the related offense of unauthorized entry is resorted to by analogy.

. In State v. Cojoe, 00-1856 (La.App. 4 Cir. 3/21/01), 785 So.2d 898, the defendant and the victim had lived in the victim's house before their divorce and again for a time after the divorce. Some of the defendant’s belongings were still in the house. However, a few weeks before the offense the victim threw the defendant out of the house and changed the locks to keep him from entering. The defendant entered the house while the victim was out of town. This Court affirmed his unauthorized entry conviction, noting that although the defendant had permission in the past to enter the house, the evidence that the victim subsequently made him leave and that she changed the locks proved that the defendant had no permission to enter on the date of the offense.

.In State v. Spain, 99-1956 (La.App. 4 Cir. 3/15/00), 757 So.2d 879, the defendant entered his ex-girlfriend's residence and attacked her and her new boyfriend. The defendant's daughter lived with the victim, and the defendant sometimes visited the residence to see her. This Court rejected the defendant’s claim that his prior acceptance into the house showed his entry was not unauthorized.